IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 2:19-cr-00279-NR-1 |
| | : | |
| EMILIO NAVARRO, | : | |
| | : | |
| DEFENDANT. | : | |

**SENTENCING MEMORANDUM**

AND NOW, comes the Defendant, Emilio Navarro, by and through his attorney Patrick J. Thomassey who files, on his behalf, this Sentencing Memorandum to aid the Court in fashioning a sentence for Mr. Navarro. For the reasons that follow, counsel contends that a variance downward to a non-custodial sentence of home confinement with community service, a special assessment, restitution and the imposition of no fine would be sufficient but not greater than necessary to satisfy the mandates of 18 U.S.C. § 3553(a).

Sentencing is scheduled for March 1, 2022 at 2:00 in Courtroom 6C.

## I. APPLICABLE STANDARDS.

18 U.S.C. § 3553(a) begins with the broad mandate that sentencing courts ". . . shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. 18 U.S.C. § 3553(a). Section 3553(a) further directs the district court to consider the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed; any pertinent policy statement; the need to avoid unwanted sentencing disparities among defendants with similar

records who have been found guilty of similar conduct; and, the need to provide restitution to any victim of the offense.

Over the past several years, the Supreme Court has given judges the power to impose sentences that are not greater than necessary to satisfy the statutory purposes of sentencing, to consider all of the characteristics of the offender and circumstances of the offense, to reject advisory guidelines that are not based on national sentencing data and empirical research and to serve their function in the constructive evolution of responsible guidelines. See ***United States v. Booker***, 543 U.S. 220 (2005); ***Rita v. United States***, 127 S.Ct. 2456 (2007); ***Gall v. United States***, 128 S.Ct. 586 (2007); ***Kimbrough v. United States***, 128 S.Ct. 558 (2007). In determining defendant's sentence, the district court must give meaningful consideration to the factors contained in 18 U.S.C.A. § 3553(a).

The Third Circuit requires that the record "demonstrate the trial court gave "meaningful consideration" to the §3553(a) factors." See ***United States v. Vargas***, 477 F.3d 94, 101-102 (3rd Cir. 2006); ***United States v. Manzella***, 475 F.3d 152 (3rd Cir. 2007); ***United States v. Parker***, 462 F.3d 273, 276 (3rd Circuit 2006), citing Cooper, 437 F.3d at 329, n3. A district court need not "discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing;" however, the record must reflect that the district court considered the § 3553(a) factors and that those factors were "reasonably applied to the circumstances of the case." *Id*. A very brief discussion of the Section 3553(a) factors, as they apply to Defendant follows.

**II. THE 3553(a) FACTORS.**

(i) *The nature and circumstances of the offense and the history and characteristics of the Defendant.* 18 U.S.C. § 3553(a)(1).

The nature and circumstances of the offense and the facts surrounding Mr. Navarro's offense are fully and completely set forth in the PSR at ¶¶ 8-15. The Court has the benefit of the Final Pre-Sentence Report (ECF 98) and accordingly, that is not set forth at length here. Defendant has filed his Position with Respect To Sentencing Factors in which he states he no objections, edits or revisions to the descriptions set forth therein.

Defendant and the Government have entered into a Plea Agreement, the terms of which were made known to the Court at the time of Defendant's Change of Plea proceeding on October 26, 2021. Defendant entered a plea of guilty to Counts 3 and 160 and he accepted responsibility for the conduct charged in Counts 1, 2 and 4 through 9 of the Superseding Indictment. The relevant terms and conditions of the plea agreement are set forth in the PSR at ¶¶ 3-5 and accordingly are not set forth here.

The history and characteristics of the Defendant are set forth in PSR ¶¶ 47 through 56 and present an accurate picture of the Defendant, however, it is not a complete picture of Emilio Navarro. Filed prior to this Sentencing Memorandum were Letters of Support for Mr. Navarro. Those letters more fully describe Mr. Navarro and clearly set forth and extol his better virtues. In *Gall v United States*, 128 S.Ct. 586 (2007), the Supreme Court of the United States held that character letters should be considered by the sentencing court as a mitigating factor via the sentencing factors outlined in 18 U.S.C. § 3553(a).

In the initial and Supplemental filing appear letters from Dr. Navarro's colleagues, former patients and friends. The letters describe a caring, competent practitioner, a friend and a

physician who has admitted his illegal conduct, has taken responsibility for that conduct and has demonstrated and continues to demonstrate remorse for his acts.

A small sampling of those letters reveals much about Emilio Navarro. A letter from one of his patients, Attorney Walter Cameron[1] states:

> I am submitting this letter on behalf of your client, Dr. Emilio Navarro. I am pleased to do so. I first met Emilio seven years ago when I fell on a patch of ice and injured my back. I sought treatment at what is now MedExpress in Jeannette, PA. Emilio was the treating physician. I was so impressed by his concern, compassion and patient care that I ultimately switched from my PCP of over 25 years to Emilio as my PCP. That was not a decision that I made lightly but it was borne of the fact that Emilio is a rare and special person.
>
> Over the years I have become more than a patient. My wife and I have socialized with him and his wife and I have represented them both on some legal matters.
>
> I have known Emilio to be a kind and caring Doctor and a consummate professional. I am honored andprivileged to call him a friend. He cannot in any way be considered a harm, threat or liability to any of his patients or the practice of medicine.

Another of his patients, Carla Dahlquist discusses the impact of this prosecution on Mr. Navarro:

> I am writing on behalf of Emilio Navarro in regards to a character reference. I first met Dr. Navarro in the late 90's when he was working at the Monsour Medical Center in Jeannette, Pa. I got to know him even better when our business relationship began in 2010. I have always found him to be conscientious, loyal and honest.
>
> Dr. Navarro is a devout Catholic and has used his faith to help him get through many ups and downs of life. His compassion drawn from his faith could be seen on a daily basis when he wastaking care of struggling patients. He was always just a phone call away for all of his patients. Dr. Navarro's position at MedExpress placed him in front

---

[1] ECF 55-1

of patients that he did not have an ongoing relationship with, he was patient, kind and humble when dealing with them.

A bad personal situation led to Dr. Navarro making a horrible decision. But I don't want that to overshadow what a tremendous physician he was. There are so many stories of how he was the only doctor that took time and was persistent enough to get a correct diagnosis for a patient. He treated each patient the way he would have treated his own family members. He is an extremely smart man and is very remorseful for his mistake.

Raymond Huffman writes:

I have known Dr. Navarro for more than ten years, since being introduced •to him by his wife and my long-time friend, Stacy Navarro. He and I are both aware of the seriousness of the crime he plead guilty to, but it is still hard for me to wrap my head around. This is out of character for the man I know, and I'd like to give a perspective that demonstrates that Emilio is more than the totality of his acts he committed.

Emilio has always been there for me and my family; willing to lend a hand with everything from guidance with a family problem or just being a good listener. He helped my wife and I get through the ups and downs of supporting our children through both good and bad. In addition, he has been an outstanding physician for me, and I credit him for me not suffering debilitating health.

Emilio is first to admit he has committed transgressions while married, but he has certainly understood the ramifications of his actions without being directed by the court system. He just wants to become a more loyal family man. This is supported by him working two jobs outside of his professional training to provide for his family. Furthermore, I am aware that Dr. Navarro used poor judgement as he confused the helping relationship with personal feelings which led to his actions. He continues to improve his self-awareness and be in control of his actions and reactions. Hopefully, he may be considered for practicing medicine after he pays his debt to society.

David Mahokey, the parent of one of Mr. Navarro's patients writes:

I am writing this letter of recommendation on behalf of Doctor Emilio Navarro whom I have had the pleasure of knowing over 15 years. I have found Dr. Navarro to be a man of exceptional Christian character. He is a man of truth, honesty

and integrity. He is extremely compassionate and knowledgeable about the Word of God and medicine.

As a parent of a juvenile cancer survivor, I can attest the care and support my family received when going through the hardship one experiences when given the diagnosis of cancer to a 12-year-old. The compassion and advice we received is immeasurable. Although my son was not a patient, the sounding board of prayer and expert advice was incalculable to the outcome of his survivorship and the lasting bond of friendship was attained.

I am extremely impressed with Dr. Navarro's dedication to others. I have been the beneficiary of a healthier life while under his care. He was always accessible to me, no matter the hour or crisis. He has nurtured my health as a friend and caregiver. I have recommended many to his practice as I have confidence in his value of his knowledge and experience. Our relationship grew beyond Patient/Doctor out of respect, gratitude and professionalism I received under his care.

I have been searching to find a replacement for Dr. Navarro. There is no shortage of young adults with strong GPA's, a sharp intelligence and a keen ambition. However, I see many of these lack compassion, understanding and trust in God. I find these qualities to be unteachable and I had those inDr. Navarro.

I can confirm that Dr. Navarro is a man of great principles, extremely dedicated to make amends for any stumble he has made. He is a good family man looking to raise his family and provide for them asa good Christian example. He is a valuable member of a community of service. Without a doubt he is worth a second chance to rebuild a life, a career and restore any disappointments he has inflicted on others.

Registered Nurse Debra S. Mickey writes:

I am a registered nurse and have known Mr. Navarro since he was a resident in 1986. We worked together for many years on medical units, drug and alcohol unit and pain clinic at Monsour Medical Center.I also was his office nurse from 1999 - 2001. We have remained friends through the years.

I recently learned that Mr. Navarro plead guilty to some charges. This is out of characterof the Mr Navarro that I've known for several decades. He has always been

devoted to his patients and profession. He was a very kind compassionate professional physician. I've seen him help numerous patients over the years. Emilio has always been well respected by patients, colleagues and the public.

Mr Navarro takes these charges very seriously and is truly remorseful. He's devastated that he let his patients and profession down, by surrendering his medical license. He has always looked out for his patients, treating their pain and overall well-being.

Finally, a letter from Dr. Richard Prough, Jr. reveals much about Emilio Navarro:

> I am writing this letter on behalf of Emilio Ramon Navarro. Emilio is a good person andof good moral character. I realize that might seem hard to believe, given the circumstances, but it is true, nonetheless. I share a close bond personally and professionally for more than 25 years.
>
> He is an excellent diagnostician and has provided care for patients under all circumstances even if they did not have the ability to pay. He turned no one away if they were in need. Emilio has spent countless hours donating his time and talents formany charities, but especially for the Westmoreland County Boy Scouts. Tens of thousands of dollars have been raised and opportunities have been provided because of his efforts.
>
> Personally, he has taken care of my entire family medically in a way that has been exceptional. My parents considered him a son because of caring and devotion tothem. Regardless of the time, day or night, Emilio was available for all of us. I amforever thankful for his caring and compassion.

Clearly, this is an ignominious ending for a physician who was as well thought of as Dr. Emilio Navarro.

As to the other aspects relating to Mr. Navarro, the PSR correctly discusses his physical conditions,[2] noting that he suffers from atrial fibrillation, hypertension, hyperlipidemia, sleep

---

[2] Filed under seal in conjunction with this filing, Defendant has filed a list of his medications and an advisory from his audiologist.

apnea, arthritis and other maladies more fully set forth in PSR ¶ 52. His conditions require that he take Eliquis, Metropolol, Succinate and Losartan. He requires a C-Pap machine for sleep. Mr. Navarro also suffers from depressive and adjustment disorders with mixed anxiety and depressed mood, diagnosed during a Court ordered psychiatric assessment on February 26, 2020 at SPHS Greensburg. He finished his initial treatment on July 21, 2021 but continues with Tracy Counseling Services for identified PTSD. PSR ¶ 53.

As is set forth in the PSR, Emilio Navarro obtained a medical degree and practiced Emergency and family medicine for years as a physician licensed in the Commonwealth since 1983. Prior to the time of this investigation he had a solid steady record of employment as outlined in PSR 57-60. Upon Indictment he surrendered his DEA License and his medical license.

Emilio Navarro is 60 years of age and as is demonstrated, his physical condition is questionable. He requires many medications. He can no longer practice medicine and the loss of his medical license and surrendered DEA license would indicate that he is not a risk to the public. His age would militate against recidivism. Accordingly, a variance downward to a non-custodial sentence of home confinement with community service, the special assessment and no fine, followed by imposition of a three years of supervised release would be sufficient but not greater than necessary and would satisfy the requirements of 18 U.S.C. § 3553(a).

*2. The need for the sentence imposed –*

*(A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;*

*(B) to afford adequate deterrence to criminal conduct;*

*(C) to protect the public from further crimes of the defendant; and*

*(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;*

As stated above, pursuant to 18 U.S.C. § 3553(a)(2)(A) the sentence imposed shall promote respect for the law. Here, pursuant to the negotiated plea, Mr. Navarro's total offense level is 13[3] and his criminal history category is I. Accordingly, Defendant's advisory guideline imprisonment range is 12 months to 18 months imprisonment. A variance downward to a non-custodial sentence of home confinement and community service, imposition of the special assessment, no fine and restitution coupled with the collateral consequences flowing the forfeiture of Defendant's Pennsylvania medical license and DEA Registration afford adequate deterrence to criminal conduct (3553(a)(2)(B)) and further, protect the public from further crimes of the defendant. (See, 3553 (a)(2)(C)).

As to 3553 (a)(2)(D)) Mr. Navarro does not need educational, vocational treatment however imposition of any term of imprisonment would necessarily implicate medical care for his various conditions, including coronary and other care.

*3. The kinds of sentences available.*

Sentencing Options are fully set forth in the PSIR at Paragraphs 62-74. The Third Circuit requires that the record "demonstrate the trial court gave "meaningful consideration" to the §3553(a) factors." See ***United States v. Vargas***, 477 F.3d 94, 101-102 (3rd Cir. 2006); ***United States v. Manzella***, 475 F.3d 152 (3rd Cir. 2007); ***United States v. Parker***, 462 F.3d 273, 276 (3rd Circuit 2006), citing Cooper, 437 F.3d at 329, n3. A district court need not "discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors

[3] Defendant satisfied the criteria set forth in U.S.S.G.§ 5C1.2(a)(1)-(5). As a result, the base offense level of 17 should be reduced by 2 levels, pursuant to U.S.S.G. § 2D1.1(b)(18), resulting in a total offense level of 15. While the Government states that it does not object to the 2-level vulnerable victim enhancement (because the factual basis supports its application), the parties did not include this enhancement in the negotiated plea. (*See* ECF No. 93 at ¶ C.) Therefore it was requested that the Court begin its analysis at a total offense level of 13. Defendant is a criminal history category I.

into account in sentencing;" however, the record must reflect that the district court considered the § 3553(a) factors and that those factors were "reasonably applied to the circumstances of the case." Id.

Under the circumstances here, considering Defendant's total offense level of 13 and criminal history I, a variance downward to a non-custodial sentence of home confinement and community service, imposition of the special assessment, no fine, restitution and three years supervised release would constitute a reasonable sentence complying with all of the mandates of 3553(a) factors. A variance downward has been requested as set forth above. Potential Fines are set forth in Paragraphs 69-71 and the Final PSR is silent on Defendant's ability to pay a fine.

*4. The kinds of sentence and the sentencing range established for –*

*(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –*
*(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 944(p) of title 28); and*
*(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or*
*(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);*

The kinds of sentence and sentencing range established for the applicable category of offense are set forth in the PSR at ¶ 60-68. Pursuant to USSG, Chapter 5, Part A, based on Navarro's total offense level of 13 and criminal history category I, the Guideline range for imprisonment is 12 to 18 months. Defendant agrees that the Guideline Range has been correctly calculated pursuant to the plea agreement and he has no corrections or revisions thereto.

*5. Any pertinent policy statement—*

*(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing commission into amendments issued under diction 994(p) of title 28); and*

*(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.*

Counsel is not aware of any pertinent policy statement applicable or germane to Defendant's case.

*6. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct*;

With respect to this factor, the facts and circumstances of Mr. Navarro's case are unique to him and in the event the court sees fit to vary downward and impose a non-custodial sentence and community service, the special assessment, restitution and three years of supervised release, it does not appear that there is any risk of a sentencing disparity between Mr. Navarro and any other similarly situated defendants.

*7. The need to provide restitution to any victims of the offense.*

Pursuant to 18 U.S.C. § 3663(A) Restitution is applicable in this case. See, PSR ¶ 70.

## III. SPECIAL REQUESTS.

Counsel respectfully requests that the Court:

(i) vary downward and impose a non-custodial sentence of home confinement and community service, payment of the special assessment, restitution, no fine and imposition of three years of supervised release;

(ii) in the event the Court sees fit to impose a sentence of confinement, recommend placement by the BOP at a facility close to the Pittsburgh area to facilitate family visitation;

(iii) recommend placement in a facility equipped to manage Mr. Navarro's physical and medical conditions;

(iv) Permit Mr. Navarro to self report.

Respectfully submitted

THOMASSEY, MILLER & SEMAN

/s/ Patrick J. Thomassey

_______________________________

PATRICK J. THOMASSEY
Pa. Supreme Court Id. No. 22864

February 23, 2022

1940 James Street
Monroeville, Pennsylvania 15146
Phone: 412.824.2055
Fax: 412.829.1851
Email: pthomassey@hotmail.com
*Attorney for Defendant Emilio Navarro*